UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------X
VERONICA WASHINGTON, Individually and as Mother
And Natural Guardian of C.H. (age 16)

                Plaintiff,

       -against-

THE CITY OF NEW YORK, POLICE OFFICER
NICHOLAS LEVESQUE (Shield 15044), and
POLICE OFFICERS, DETECTIVES and
SUPERVISORS JOHN and JANE DOES 1-10,

                Defendants.
------------------------------------------------------------------------------X

**15 CV 7205**

**COMPLAINT**

**JURY TRIAL DEMANDED**

       Plaintiff **VERONICA WASHINGTON**, individually and as Mother and Natural Guardian of C.H. (age 16), by her attorney, Joel Berger, Esq., for her complaint alleges, upon information and belief, as follows:

### *NATURE OF THE ACTION*

       1.     This is an action to recover money damages arising out of the violation of plaintiff's rights under the Constitution and laws of the United States and the State of New York, including false arrest, false imprisonment and malicious prosecution, by employees of the New York City Police Department (NYPD).

### *JURISDICTION AND VENUE*

       2.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

       3.     The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343.

       4.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) (2), in that all of the events giving rise to the claim -- plaintiff's arrest and imprisonment in New York and Bronx Counties,

defendants' conduct in bringing about the prosecution of plaintiff in New York County, and the decision of the New York County District Attorney's office to dismiss the charges against plaintiff without submitting them to a grand jury, six months after the arrest -- have all occurred within this District.

### *PENDENT JURISDICTION*

5.      This Court also has jurisdiction over plaintiff's state law claims, pursuant to its pendent or supplemental jurisdiction as codified in 28 U.S.C. § 1367.

6.      On February 18, 2015, within ninety days after the claims alleged in this complaint arose, a verified Notice of Claim was duly served upon the Comptroller of the City of New York by certified mail, return receipt requested, certified mail # 7012-640-0001-1418-814, pursuant to General Municipal Law § 50-e.  The return receipt, signed by an employee of the Comptroller's office, establishes that it was received by that office on February 23, 2015.  A letter from the Comptroller's office to plaintiff's counsel, dated March 2, 2015, acknowledged receipt of the claim and referenced it as Claim Number 2015PI005354, under the name of C.H.

7.      On August 4, 2015, within 90 days of the dismissal of the charges against C.H., an Amended Notice of Claim was served upon the Comptroller.

8.      At least thirty days have elapsed since the service of the Notice of Claim and Amended Notice of Claim, and adjustment or payment of the claim has been neglected or refused by defendant City of New York.

9.      On September 8, 2015, a hearing was conducted by a representative of the Comptroller's office pursuant to New York State General Municipal Law Sec. 50-H, at which both C.H. and plaintiff Veronica Washington, mother of C.H., testified.

2

10.     This action is being commenced within one year and ninety days after the happening of the events upon which the claims are based.

*JURY DEMAND*

11.     Plaintiff demands trial by jury in this action.

*PARTIES*

12.     Plaintiff **VERONICA WASHINGTON**, age 52, is an African-American woman, a citizen of the United States and a resident of New York State and New York County.

13.     Plaintiff is the Mother and Natural Guardian of C.H., an African American girl, who lives with plaintiff in New York County and who, at all times relevant herein was -- and as of the filing of this Complaint still is -- 16 years old.

14.     C.H. has no criminal record of any kind, having never been convicted of any offense and having never even been arrested other than on the occasion of the Incident alleged herein.  She has a learning disability and has been home schooled since the 9th grade, and she is now close to completing 12th grade and applying for college.

15.     Defendant City of New York is a municipal corporation organized under the laws of the State of New York.

16.     Defendant City of New York operates the NYPD, a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers, detectives and supervisory police officers, including the individually named defendants herein.

17.     At all times relevant herein, defendant Nicholas Levesque, Shield 15044, was a police officer employed by the NYPD, assigned to the 46th Precinct in Bronx County.

18.    At all times relevant herein, defendants John and Jane Does 1-10 were police officers, detectives and supervisory police officers employed by the NYPD.  One of the John Does is a male detective, first name "Frank."  One of the Jane Does, identified as Jane Doe # 1 herein, is a female detective. Plaintiff does not at this time know the real names and shield numbers and commands of defendants John and Jane Does 1-10.

19.    At all times relevant herein, defendants Levesque and John and Jane Does 1-10 were acting as agents, servants and employees of defendant City of New York and the NYPD.

20.    At all times relevant herein, all defendants were all acting under color of state law

*FACTS*

21.    On Friday, January 16, 2015, in the early evening hours, at plaintiff Veronica Washington's dwelling, 70 Lenox Avenue (113-114 Streets), apartment 12J (the Martin Luther King Towers project of the NYC Housing Authority) the dwelling was raided by approximately 10-12 officers of the New York City Police Department (NYPD) who broke down the door of the apartment.

22.    The NYPD officers claimed to have a search warrant and stated that the warrant was directed at another individual, Jesse Hines, who was believed to have contraband in the apartment.

23.    The warrant was necessarily based upon an affidavit or affidavits submitted by one or more of the John Doe and Jane Doe defendants herein.

24.    Jesse Hines was not and never has been a resident of the dwelling.

25.    Ms. Washington, her 71 year-old mother Lavenia Phillips (the NYCHA leaseholder), and her 16 year-old daughter C.H., are the sole residents of the dwelling.

26.    Ms. Phillips is Jesse Hines's godmother and Hines sometimes visited the apartment, but he was not a resident of it.  Jesse Hines was not present in the apartment at the time of the raid,

and his whereabouts were unknown to the police and to the residents of the apartment at the time. Jesse Hines lives in Brooklyn with his wife and children.

27.     C.H. has her own bedroom within the apartment.

28.     The police spent nearly two hours searching the dwelling, including C.H.'s bedroom.

29.     The police allegedly uncovered three items of contraband in the apartment.

30.     All of the alleged contraband was hidden, none was plain view, and none was in close proximity to C.H.'s bedroom.

31.     The alleged contraband consisted of two bags containing PCP, hidden in a freezer in the kitchen, and a loaded .32 caliber revolver with live ammunition and a black air pistol, both hidden in a suitcase in a hallway by the apartment door.

32.     The suitcase in the hallway by the apartment door contained male clothes that obviously did not belong to any of the residents of the dwelling, all of whom are female.

33.     C.H. had no connection whatsoever to the contraband found by the police.

34.     The police broke down the door of C.H.'s room even though it was unlocked, and searched her room thoroughly.

35.     C.H. was wearing only underwear and a bra, yet she was patted down by a male officer prior to the arrival of a female officer, Jane Doe # 1, who again frisked her. A detective, first name Frank, last name unknown at this time, was also present in C.H.'s bedroom.

36.     Even though C.H had no connection whatsoever to the contraband, the police arrested her at approximately 7:50 P.M., handcuffed her, and took her in handcuffs to the 46th police precinct in the Tremont section of the Bronx (2120 Ryer Ave.), several miles from her home.

37.     When Ms. Phillips tried to protest the police pushed her several times and threatened

5

the 71 year-old grandmother with physical harm.

38.     The police knew that C.H.'s mother, Ms. Washington, and grandmother, Ms. Phillips, would not be able to get to the 46th precinct expeditiously:    Ms. Washington is confined to a wheelchair and cannot walk.  Ms. Phillips suffers from a heart condition, high blood pressure, and diabetes.

39.     The 16 year-old C.H., who had never been arrested, was alone and extremely frightened

40.     The police chose to arrest C.H. because she was the most vulnerable mobile resident of the apartment and they hoped that interrogating her would lead them to Hines.

41.     C.H. had no knowledge whatsoever of Hines's whereabouts.

42.     At the 46th Precinct numerous plainclothes officers and/or detectives, including the John and Jane Doe defendants herein, interrogated her about Hines and the contraband.

43.     At the 46th Precinct defendant police officers threatened C.H. that she would be removed from her home and placed in the custody of the Administration for Children's Services.

44.     At the 46th Precinct defendant police officers also attempted to C.H. into saying that she was somehow involved with the contraband in the apartment. They asked her to sign something; the 16 year-old learning-disabled Cortney was scared and hoped that the police would then let her go home, so without reading she  signed it.

45.     Instead of releasing C.H. the police charged her as an adult.

46.     At approximately 1:00 A.M. on Saturday, January 17, 2015, defendants had C.H. taken in handcuffs to Manhattan Central Booking.

47.     C.H.'s elderly grandmother, Lavenia Phillips was able to get to the 46th precinct,

driven there by Ms. Phillips's brother, while C.H. was still at the precinct.

48.     The police did not allow Ms. Phillips to see C.H.

49.     Ms. Phillips was at first told that C.H would be released, but was subsequently informed that C.H. was being sent to Manhattan Central Booking.

50.     When Mr. Phillips protested, defendants ordered her to leave the precinct.

51.     A felony complaint against C.H. (Docket No. 2015NY003819) was sworn to by defendant PO Nicholas Levesque, Shield 15044, of the 46th Precinct. A copy is annexed as Ex. A.

52.     The felony complaint charged C.H. with two felonies of criminal possession of a weapon:  Penal Law (P.L.) § 265.03 (3), a Class C felony and P.L. § 265.02, a class D Felony.

53.     P.L. § 265.03 (3) was inapplicable because the revolver was found in a home.

54.     P.L. § 265.02 was inapplicable because it does not apply to revolvers.

55.     Defendant PO Levesque also charged C.H. with criminal possession of a controlled substance in the seventh degree (P.L. § 220.03, a class A misdemeanor), and with unlicensed possession of the air pistol (NYC Adm. Code § 10-131 (b), a minor offense).

56.     Defendant PO Levesque claimed in the felony complaint that "[t]he defendant further admitted in my presence that to knowing [*sic*] the above-mentioned items were inside the above-mentioned location, the defendant's home address."

57.     Even if any such admission were true and knowingly and intelligently made, defendants were well aware that mere awareness obviously does not amount to constructive possession -- especially in the case of a 16 year-old girl who can hardly be expected to force an older man to remove contraband from her mother's dwelling.

58.     No "Statement Notice" alleging any statements made by C.H. to the police was ever

served on defense counsel by the New York County District Attorney's Office.

59.     As defendants were also well aware, there was no presumption of possession applicable to C.H. as to any of the contraband hidden in the apartment in places other than her room. Penal Law § 265.15 (weapons presumption applicable only to machine guns, explosives, multiple firearms and certain vehicles); Penal Law § 220.25 (2) (controlled substance presumption applicable only if the substance is in "open view" and "close proximity").

60.     The fact that the 16 year-old C.H. lived in the apartment did not provide probable cause to arrest.

61.     The arrest and submission of charges against C.H. by defendant PO Levesque had to be approved by one or more of the supervisory officers who are among defendants John and Jane Does 1-10, who are necessarily responsible for the arrest and submission of charges.

62.     C.H. did not get to see a judge until approximately 2:00 A.M. on Sunday, January 18.

63.     By the time C.H. was brought before a judge she had been in NYPD custody for at least 30 hours.

64.     Even though two of the charges were felonies, C.H. was released on her own recognizance.

65.     C.H. was released on her own recognizance due to the obviously questionable nature of the charges.

66.     At arraignment on January 18 the matter was adjourned for a nearly three months, to April 7, 2015, to give the New York County District Attorney's office time to determine what to do with the charges.

67.     Plaintiff Veronica Washington paid $4,500 to retain a private attorney, Jeffrey Greco,

Esq., an experienced former prosecutor, to defend C.H.

68.     On April 7, 2015, the criminal case was adjourned another three months, to July 8, 2015.

69.     The prosecution has six months to obtain an indictment in a felony case (CPL § 30.30 (1) (a)).

70.     The prosecution never presented the charges to a grand jury.

71.     Shortly before the July 8 court date two officers -- female detective Jane Doe # 1 and a male officer -- came to plaintiff's apartment.

72.     Jane Doe # 1 and the male officer apologized to plaintiff Veronica Washington.

73.     The two officers conceded to Veronica Washington that C.H. had nothing to do with the contraband found in the apartment.

74.     On July 8, 2015, the prosecution stated on the record that the charges against C.H. could not be proved beyond a reasonable doubt, and moved to dismiss all charges against her.  A

copy of the transcript of the proceeding is annexed as Ex. B.[1]

75.    On July 8, 2015, the Court dismissed the charges and the case was sealed (Manhattan Criminal Court, Part F, Judge Nock).  A copy of the Certificate of Disposition is annexed as Ec. C.

.    76.    The NYPD has a uniform policy and practice of arresting most residents of a raided dwelling if any contraband is found anywhere in the dwelling.

77.    Even if there are individuals in the dwelling who did not possess any contraband and were not in close proximity to any contraband, and even where the contraband was hidden and there was no contraband in open view, the NYPD uniformly arrests most residents in the dwelling.

78.    Several recent cases in which the undersigned represented the plaintiffs, all settled expeditiously by the City of New York without extensive litigation, demonstrate this uniform policy:

(a)    *Adams v. The City of New York,* 15 CV 2555 (WFK) (RER) (EDNY):  In this very recent case, settled in July 2015 immediately following the initial conference before the Magistrate Judge (only two months ago), the only contraband found in the house in Queens County was in a bedroom occupied solely by Ms. Adams's nephew.  Ms. Adams had a separate bedroom in the house.  Ms. Adams, a resident of North Carolina who had come to New York City approximately four months before the raid to care for her sick elderly mother (owner and resident of the house), had no prior criminal record of any kind.  Most of the contraband found in the nephew's bedroom was hidden inside a shoe holder in a closet, and a small amount (four ziplock bags of cocaine) was found "next to the bed" in the nephew's bedroom.  No contraband was found in any other room or any other area of

---

[1] The prosecutor added that she was also moving to dismiss "in the interest of justice." Even if that were the only basis for dismissal, it is black-letter law that a dismissal "in the interest of justice" is a favorable termination for purposes of a malicious prosecution lawsuit unless the disposition "was inconsistent with the innocence of the accused."  *Cantalino v. Danner*, 96 N.Y. 2d 391, 396 (2001).  In this case the dismissal obviously was not inconsistent with plaintiff's innocence. Additionally, it is black-letter law that an "interests of justice" dismissal does

the house and no contraband was found on Ms. Adams's person.  After approximately 19 hours in custody at a police precinct and Queens Central Booking, the plaintiff was released on her own recognizance even though she had been charged with possession of narcotics with intent to sell, a Class B felony (PL § 220.09 (1).   Approximately six weeks later the case was submitted to a Queens County grand jury.  According to the City's defense attorney, the prosecution actively sought at this proceeding to secure Ms. Adams's indictment.  However, Ms. Adams testified before the grand jury, and the grand jury returned No True Bill.

Ms. Adams filed a federal civil rights action on May 5, 2015, and served it on May 8, 2015. The Court (Magistrate Judge Reyes) denied the City's request for a 60-day extension of time to respond, and granted only a 31-day extension, to June 29, 2015.  The Court also scheduled the initial conference for two days thereafter, July 1, 2015. At the July 1 the initial Conference before Magistrate Judge Reyes, the Court expressed the view that there was no probable cause for the arrest, noting that even awareness by the plaintiff that her nephew possessed contraband would not provide probable cause to arrest her -- whereupon the defense attorney (a Senior Counsel in the Corporation Counsel's office) asked Judge Reyes for his view as to the amount of damages and the Judge recommended $50,000.  The Corporation Counsel's office and the Comptroller's office promptly accepted Judge Reyes's recommendation, as did plaintiff, and the case was settled within two month of the filing of the complaint, without any discovery being taken by either side.

The instant case is every bit as strong on liability as the very recent *Adams* case, and the instant case is far more aggravated because (i) the plaintiff is a 16 year-old child, (ii) she was in custody for 30 hours rather than 19, (iii) the prosecution did not even consider the case worthy of

---

not preclude the false arrest claim. *Hollender v. Trump Village Co-op, Inc.,* 58 N.Y.2d 420, 423 (1983).

presentation to a grand jury, and (iv) C.H. had to endure facing serious criminal charges for 6 months rather than 6 weeks.

(b)     *Kerr v. The City of New York*, 10 CV 4592  (RJH) (JLC) (SDNY): the only drugs found inside Ms. Kerr's Manhattan apartment were hidden in her 17 year-old son's bedroom -- hidden in a men's athletic shoe within that bedroom. No contraband was found on Ms. Kerr's person or in her bedroom.  No contraband was found in close proximity to Ms. Kerr.  No contraband was found in open view or in any common area within the apartment.  Ms. Kerr was nonetheless arrested, but the charge was dismissed at the first court date.   The Assistant Corporation Counsel argued that Ms. Kerr was criminally responsible simply because she was the leaseholder of the apartment, *i.e.*, that the parents of any teenager who has hidden drugs in his bedroom are strictly liable for criminal possession of drugs merely because they own or lease the home where their child lives.  The City ultimately settled the *Kerr* case for $75,000 at a settlement conference before Magistrate Judge Cott on November 29, 2010.

(c)     *Reed v. The City of New York*, 10 CV 3215 (LTS) (RLE) (SDNY): the only drugs recovered (four misdemeanor weight "twists" of crack cocaine) were in the pocket of a men's jacket belonging to a male visitor to Ms. Reed's Brooklyn apartment, found in the bedroom of Ms. Reed's teenage daughter who was the girlfriend of the visitor.  The police nonetheless arrested Ms. Reed.  Prosecution was declined after Ms. Reed had been incarcerated for approximately 21 hours. The City settled for $75,000 ($60,000 to Ms. Reed and $15,000 to her 9 year-old daughter who was upset at seeing her mother arrested and taken away for nearly 24 hours) at a settlement conference before Magistrate Judge Ellis on August 30, 2010.

(d)     *Lozada and Sealy v. The City of New York*, 09 CV 9671 (LAK) (KNF) (SDNY): the

only contraband recovered had been hidden in a hallway just above the apartment door by Ms. Lozada's brother, who frequently stayed in Ms. Lozada's Brooklyn apartment. The brother was the target of the warrant, based upon three sales to undercover officers in the neighborhood and the building -- but not in the apartment. The police nonetheless arrested Ms. Lozada and Mr. Sealy (her son, age 18), simply because they lived in the apartment. Prosecution was declined in the case after approximately 24 hours imprisonment, and the City settled for $120,000 ($60,000 to each plaintiff) at a settlement conference before Magistrate Judge Fox on April 14, 2010.

(e)     *Chiclana v. The City of New York*, 09 CV 623 (CM) (MHD) (SDNY): the only contraband found was a small quantity of marijuana in a pocket of pants worn by a male visitor to the apartment at the time of the raid, yet the detectives arrested the uninvolved Ms. Chiclana who lived in the apartment. Prosecution was declined after approximately 20 hours of imprisonment, and the City settled for $50,000 at a conference before Magistrate Judge Dolinger in June 2009.

(f)     *Robinson v. The City of New York*, 12 CV 4220 (SJ) (JMA) (EDNY):  plaintiff Erika Robinson was asleep in her nightclothes, in a bedroom shared with her sister, when the police raided the Brooklyn apartment. The only contraband found in the apartment, a ziplock bag allegedly containing a small residue of marijuana, was found at a location nowhere near of plaintiff's bedroom.  All residents of the apartment were initially arrested and taken in handcuffs to the 76th Precinct.  Plaintiff was kept at the precinct in her nightclothes for approximately 9 hours before the police realized that they could not charge her with having anything to do with the ziplock bag containing a tiny residue of marijuana, and she was released.  (The plaintiff's mother was initially wrongfully charged with the misdemeanor of public possession of marijuana even though the ziplock bag had been found within the privacy of an apartment; she eventually

accepted an Adjournment in Contemplation of dismissal to the correct charge and did not sue.). Because Ms. Robinson was in custody for only 9 hours, was never taken to Central Booking and was never charges with any offense, the City settled her case for $20,000 on October 29, 2012, at the initial conference before Magistrate Judge (now District Court Judge) Azrack.

79.     The *Adams*, *Kerr*, *Reed*, *Lozada/Sealey*, *Chiclana*, and *Robinson* cases all demonstrate that the arrest, imprisonment and charging of the 16 year-old C.H. in this case with narcotics felonies was anything but an aberration.  The NYPD persists in a pattern of deliberate indifference to the constitutional and civil rights of innocent bystanders in dwellings where contraband is found.  The City then routinely settles the ensuing lawsuits at an early stage.

### *ALLEGATIONS CONCERNING LOCAL CIVIL RULE 83.10*

80.     This case should be exempted from Local Civil Rule 83.10 (hereafter the "Local Rule").

81.     Plaintiff will serve a CPL § 160.50 release upon the City together with the instant Complaint.   Although the release will be in the form set forth in Ex. A to the Local Rule, the final paragraph of that form is irrelevant because C.H. has no prior arrests.

82.     There are no medical or psychological treatment records relevant to this case, and accordingly this case is exempt from the requirement that releases for such records be served together with the CPL § 160.50 release.

83.     The automatic 60-day extension of the Local Rule (¶ 3) for responding to the Complaint, providing defendants with 81 days to respond to the Complaint without any showing of good cause, conflicts with Fed. R. Civ. P. 83 (a) (1) by imposing a time frame for response that is plainly inconsistent with Fed. R. Civ. P 12 (a) (1) (A) (i).  Rule 83 (a) (1) requires that Local

Rule "must be consistent with" the Federal Rules.

84.     As demonstrated by the Eastern District *Adams* case described in ¶ 78 (a), above, the City is perfectly capable of answering the complaint in many police misconduct cases within a much shorter period of time than the generous 81-day period accorded by the Local Rule.

85.     As demonstrated by the Southern District and Eastern District cases described in ¶ 78, above, this case is particularly well-suited to mediation by a United States Magistrate Judge, since Magistrate Judges are well versed in the law of probable cause and constructive possession, whereas most mediators on the Southern District Mediation Panel (Local Rule, ¶ 4 (a)) do not have nearly the same degree of experience with cases involving such principles of criminal and civil rights law.

86.     The "limited discovery" that the City must provide under the Local Rule (Ex. C) does not include some of the most important documents relevant to this case, such as the  search warrant and the requisite affidavit or affidavits in support of the search warrant submitted by one of the defendant police officers.  The these documents will confirm plaintiff's allegation, based upon statements made to plaintiff by the police at the time of the raid,  that the raid was directed solely at Jesse Hines and contraband believed to be in possession of Jesse Hines, and was not directed at any resident of the apartment or based upon allegations that any resident of the apartment possessed any contraband or was involved in any illegal activities.  Ex. C. also does not require defendants to provide any documents concerning the planning for and execution of the raid on plaintiff's dwelling.   Ex. C. also does not require defendants to provide any discovery concerning any arrest and prosecution of Jesse Hines or any other individual other than C.H. for the contraband uncovered in the raid on plaintiff's dwelling.

15

87.     The Local Rule does not require defendants to cooperate in identifying any of the John and Jane Doe defendants.

88.     The Local Rule allows the City to determine unilaterally whether any CCRB and CPI complaints against defendant PO Levesque sufficiently "similar" to the incident of this case that production of indices reflecting such complaints must be produced under ¶ 5 (a) (iii).

89.     The Local Rule provides plaintiffs with no opportunity to challenge the City's unilateral discovery determinations until after mediation or a settlement conference, and the mediation need not take place until 14 weeks (98 days) after the filing of the answer, which itself need not be filed until 81 days after service of the complaint, thereby stalling the case for 179 days -- a full half-year -- before any meaningful litigation can commence.   Plaintiff had to endure a 6-month delay just to have the charges against her dismissed, and should not be needlessly sidetracked another 6 months due to the procedures of the Local Rule.   Applying such a delaying regimen in a Local Rule applicable to all civil rights cases alleging misconduct by the police officers of one particular municipal defendant, without any individualized showing of necessity violates the requirement of Rule 83 (a) (1) that Local Rules "must be consistent with" the Federal Rules governing discovery (Rule 26 *et seq.)* in all other cases.

90.     This case can and should be settled expeditiously by the City, in accordance with the procedures and policies that policies that led to expeditious settlements in the cases described in ¶ 78, above.   The Local Rule actually delays the settlement process and does not serve the interests of the Court in promoting fair and expeditious settlements.   Instead, it drags out and hampers the settlement process unnecessarily.

91.     The Local Rule is one-sided in the extreme, serving the City's objective of

16

attempting to have police misconduct cases settled cheaply as the cost of doing business, and pressuring low-income plaintiffs into accepting very low settlements with minimal litigation.  It ignores the deterrent purposes of 42 U.S.C. § 1983 and unfairly mistreats victims of police misconduct.

92.     The Local Rule is an inappropriate judicial response to the vast increase cases against the NYPD and its officers, which resulted from rampant police misconduct and is unlikely to abate significantly unless and until the NYPD brings about substantial improvements in police-community relations.

### FIRST CLAIM FOR RELIEF

93.     Plaintiff repeats and realleges the allegations contained in ¶¶ 1-92.

94.     Defendants, by their conduct toward plaintiff alleged herein, violated plaintiff's rights guaranteed by 42 U.S.C. § 1983, the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

### SECOND CLAIM FOR RELIEF

95.     Plaintiff repeats and realleges the allegations contained in ¶¶ 1-92 and 94.

96.     The acts complained of herein are a direct and proximate result of the failure of the City of New York and the NYPD properly to select, train, supervise, promote and discipline police officers and supervisory officers.

97.     The failure of the City of New York and the NYPD properly to select, train, supervise, promote and discipline police officers and supervisory officers constitutes gross and deliberate indifference to unconstitutional conduct by those officers.

98.     The official policies, practices and customs of the City of New York and the NYPD, alleged in ¶¶ 1-55, 57 and 59-60 violated plaintiff's rights guaranteed by 42 USC § 1983, the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

### THIRD CLAIM FOR RELIEF

99.     Plaintiff repeats and realleges the allegations contained in ¶¶ 1-92, 94, and 96-98.

100.    The conduct toward plaintiff alleged herein constituted false arrest, false imprisonment, malicious prosecution, and employee negligence.

101.    The conduct toward plaintiff alleged herein subjected plaintiff to trauma, shock, debasement, shame, fright, fear, humiliation, embarrassment, loss of freedom, harassment, and physical, psychological and emotional injury, trauma, pain, and suffering.

### FOURTH CLAIM FOR RELIEF

102.    Plaintiff repeats and realleges the allegations contained in ¶¶ 1-92, 94, 96-98, and 100-101.

103.    At all times relevant herein, the individual defendants were on duty and were acting within the scope of their employment as agents, servants and employees of the City of New York, which is therefore responsible for their conduct under common law, state law and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against defendants as follows:

(a)     Compensatory damages against all defendants, jointly and severally;

(b)     Punitive damages against all individual defendants, jointly and severally;

(c)     Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

(d)     Such other and further relief as this Court deems just and proper, including exemption from Local Civil Rule 83 10, and prompt referral to a Magistrate Judge for general pretrial including discovery and settlement.


Dated:   New York, New York
         September 11, 2015

                                        /s/ Joel Berger
                                        **JOEL BERGER**
                                        360 Lexington Avenue, 16th Fl.
                                        New York, New York 10017
                                        (212) 687-1425

                                        **ATTORNEY FOR PLAINTIFF**